**UNITED STATES of America**

v.

**Joseph MASSINO, Patrick Defilippo and John Spirito.**

**No. 03–CR–929.**

United States District Court,
E.D. New York.

Dec. 3, 2003.

Greg D. Andres, Mitra Hormozi and Nicolas Bourtin, United States Attorney's Office, Brooklyn, NY, for Plaintiff.

David Breitbart, Attorney at Law, Ephraim Savitt, Flora Edwards, New York, NY, for Defendant Joseph Massino.

Jean DeSales Barrett, Ruhnke & Barrett, Montclair, NJ, LLoyd Epstein, Richard W. Levitt, Attorney At Law, New York, NY, for Defendant Patrick Defilippo.

Carl J. Herman, Attorney At Law, Livingston, NJ, Kenneth A. Paul, New York, NY, Murray Richman, Law Office Of Murry Richmond, and Stacey Richman, Bronx, NY, for Defendant John Spirito.

### MEMORANDUM AND ORDER

GARAUFIS, District Judge.

On October 3, 2003, this court appointed learned counsel for Joseph Massino, Patrick DeFilippo and John Spirito pursuant to 18 U.S.C. § 3005 and 21 U.S.C. § 848(q)(4) upon their indictment in the above captioned case for capital offenses. The attorneys appointed as learned counsel were Ephraim Savitt, Jean Barrett and Carl Herman, respectively. On October 27, it became necessary to disqualify the learned counsel appointed to represent Massino, Ephraim Savitt, due to a potential conflict of interest. *See United States v. Joseph Massino*, No. 02–CR–307, 03–CR–929, 2003 WL 23273876 (E.D.N.Y., October 27, 2003). The difficulty of replacing Savitt with an attorney whose schedule would allow for the timely disposition of this case brought to my attention the possible unavailability of such counsel. On November 25, 2003, the court replaced Savitt with David Stern.

Title 18 U.S.C. § 3005 states that the court shall "assign 2 such counsel, of whom at least 1 shall be learned in the law applicable to capital cases." Representing a defendant in a death penalty case is particularly time consuming, complex and expensive. *See* Subcomm. on Fed. Death Penalty Cases, Comm. on Defender Servs., Judicial Conference of the United States, *Fed. Death Penalty Cases: Recommendations Concerning the Cost and Quality of Defense Representation* ("Spencer Report") at 3, 4–6, 9–10 (1988). Death penalty

cases are bifurcated and involve both a guilt and a penalty phase each of which requires extensive preparation. *Id.* at 5–6. In the penalty phase, counsel must be well versed in the defendant's life history in order to present mitigating information, respond to prosecution evidence that need not satisfy normal rules of evidence, and put on a case for a lesser sentence. *Id.* Because of the nature of death penalty trials and the resources required for an adequate defense, it is essential that defendants facing the death penalty have sufficient representation from the onset of the litigation. Defendants DeFilippo and Spirito each have retained one attorney. This court believes that the combination of only one retained counsel and one court appointed counsel may be insufficient to protect the rights of a defendant in some complex death penalty eligible cases such as this. Moreover, should DeFilippo or Spirito become financially unable to maintain private counsel at any time during this litigation in which the Government seeks the death penalty, the rights of these defendants might be jeopardized. When a death sentence is a potential outcome, the court must not risk a trial infected by the possibility of insufficient representation. Accordingly, the court will authorize the appointment of co-counsel for defendants DeFilippo and Spirito.[1]

This court is concerned not only with the rights of these defendants, but also with the need to ensure that others facing federal death penalty charges in the Eastern District of New York are represented adequately. Through the process of appointing counsel for Massino, DeFilippo and Spirito, the court has become aware of the limited availability of attorneys qualified to serve as learned counsel in federal death penalty cases. This problem may become particularly acute if the number of death eligible prosecutions continues to increase. According to the Spencer Report, learned counsel

> should have distinguished prior experience in the trial, appeal, or post-conviction review of federal death penalty cases, or distinguished prior experience in *state* death penalty trials, appeals or post-conviction review that, in combination with co-counsel, will assure high quality representation.

*Spencer Report* at 16 (emphasis in original). Optimally, the experience one needs to serve as learned counsel in a death penalty case includes the experience of serving as co-counsel in a death penalty trial. This presents obvious problems. I conclude that the appointment of accomplished trial attorneys pursuant to 18 U.S.C. § 3005 to serve as *second seat* to learned counsel for DeFilippo and Spirito will assist in the defendants' case and will provide experience to two more attorneys who may then serve as primary death counsel in future cases. Expanding the list of potential learned counsel at a time when the Attorney General is authorizing death penalty charges with greater frequency will facilitate the fair and prompt

---

1. The court is not authorizing the appointment of a second attorney for Massino pursuant to 18 U.S.C. § 3005 because he has retained three private attorneys who are working closely with his current appointed learned counsel, David Stern. On November 25, 2003, David Breitbart, one of Massino's retained counsel and an experienced attorney, stated on the record that he was committed to representing Massino for the duration of all trials on indictments 02–CR–307 and 03–CR–929. Massino thus has four able defense counsel, one of whom is qualified death counsel, and another of whom has agreed to represent him throughout his trial whether or not the Attorney General certifies the death charge in 03–CR–929. The court deems this representation to be sufficient to address the court's concerns about the adequacy of the representation.

resolution of these cases.[2] This need for more attorneys qualified to serve as learned counsel also will help to ensure the availability of sufficient counsel without potential conflicts of interest.

The court has at its disposal two sources in identifying the pool from which these defendants might choose the co-counsel to assist their learned counsel, to wit, the Federal Public Defender and the Federal Death Penalty Resource Counsel Project ("FDPRC"). 18 U.S.C. § 3005 specifies that "[i]n assigning counsel under this section, the court shall consider the recommendation of the Federal Public Defender organization." Attorney Peter Kirscheimer of the Federal Defender Office of the Eastern District has confirmed that few if any attorneys are available to serve as learned counsel for a trial commencing before next fall. In researching available learned counsel, Kirscheimer contacted the FDPRC. The FDPRC is a panel of three capital litigators funded by the Administrative Office of the United States Courts who, on a part-time basis, facilitate the work of learned counsel throughout the country. Despite the importance of the FDPRC's function, the court was discouraged to learn that FDRPC ran out of funding for Fiscal Year 2003 during the summer, requiring the staff attorneys to work part of that term on a volunteer basis. The court was able to speak with one of these attorneys, Kevin McNally of Frankfort, Kentucky, who confirmed a shortage of lawyers qualified to serve as learned counsel who are available to represent defendants in trials scheduled to commence before late 2004. This problem potentially will result in pushing back the trial date in this case to the winter of 2005.

Due to this lack of learned counsel, the court has requested a list of attorneys who are qualified to serve as "second seat" to learned counsel and, through that post, gain the experience necessary to be appointed death counsel in future cases. Kirscheimer has provided this court with such a list. In view of the complexity of this case and the court's continuing obligation to guarantee adequate counsel to death eligible defendants, the court directs that DeFilippo, Spirito and their counsel submit to this court by December 19, 2003 their recommendations of attorneys for appointment as second-seat to learned counsel.

SO ORDERED.

---

2. Although delay is excluded in this case under the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161(h)(8)(A)-(8)(B)(ii), pursuant to a Government motion and due to the complexity of the case, the number of defendants, and the nature of the prosecution, the court is obligated by the Constitution to assure defendants such as these (all three of whom are in custody) with a speedy trial consistent with the requirements of due process.